# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO IBARRA, an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LOAN CITY, a California corporation authorized to do business in California; AURORA LOAN SERVICES INC., a foreign corporation authorized to do business in California; CAL-WESTERN RECONVEYANCE CORPORATION, a California corporation authorized to do business in California; WACHOVIA FINANCIAL SERVICES, INC., fka WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK and registered foreign corporation doing business in California; HARBORSIDE FINANCIAL NETWORK, a California corporation authorized to do business in California, and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | CASE NO. 09-CV-02228-IEG (POR)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. No. 6); and**<br><br>**(2) DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE (Doc. No. 7).** |

Presently before the Court are Defendant Aurora Loan Services LLC's ("Aurora") motion to dismiss Plaintiff's Complaint and motion to strike portions of Plaintiff's Complaint. (Doc. Nos. 6 & 7.) Plaintiff filed an opposition, and Aurora filed a reply.

The Court finds the motions suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1). For the reasons stated herein, the Court grants the motion to dismiss and denies as moot the motion to strike.

**FACTUAL BACKGROUND**

This matter concerns the refinancing of Plaintiff Armando Ibarra's ("Plaintiff") principal residence in Chula Vista, San Diego. The following facts are drawn from Plaintiff's Complaint unless otherwise noted.

On September 6, 2006, Plaintiff obtained a loan from Loan City, brokered by Equipoint Financial Network, Inc. dba Harborside Financial Network ("Harborside"). Plaintiff had received an unsolicited letter from Harborside offering to refinance Plaintiff's home. Plaintiff called Harborside and was put in touch with Sal Sandjep, a Harborside representative. Mr. Sandjep informed Plaintiff that he could get Plaintiff a loan at a reasonable rate of interest. The initial interest rate listed on the Good Faith Estimate was 1%. Mr. Sandjep told Plaintiff that because of the low interest rate, Plaintiff's monthly obligations would be "well within the range of affordable." The interest rate stated on the Deed of Trust is 6.875%. (Def.'s Req. for Jud. Notice in Supp. of Mot. to Dismiss ("RJN"), Exhibit 1.)

In March of 2008, Aurora was assigned the servicing rights to the loan. (RJN, Exhibit 2.) In early 2009, foreclosure proceedings were initiated. According to Plaintiff, because the interest rate was higher than represented to him, his monthly payments started rising, until they were no longer affordable. Also, in early 2009, Plaintiff allegedly discovered numerous Truth in Lending Act violations, as well as the failure to provide disclosures in violation of federal and state law. On July 9, 2009, Plaintiff sent a letter to Loan City, World Savings, Harborside, and Aurora rescinding the contract.

Subsequently, the property was sold at the foreclosure sale to Aurora. (RJN, Exhibit 5.)

**PROCEDURAL HISTORY**

On August 18, 2009, Plaintiff filed the Complaint in the Superior Court for the County of San Diego, naming Aurora, Loan City, Cal-Western Reconveyance Corp., Wachovia Financial Services, Inc., and Harborside as Defendants. The case was removed to this Court. (Doc. No. 1.)

1  The Complaint sets forth eight causes of action: (1) violation of the Truth in Lending Act
2  ("TILA"), (2) violation of California Business and Professions Code § 17200, (3) declaratory
3  relief, (4) predatory lending, (5) breach of fiduciary duties, (6) constructive fraud, (7) fraud, and
4  (8) negligent misrepresentation.
5  　　　On October 29, 2009, Aurora filed the instant motion to dismiss Plaintiff's Complaint for
6  failure to state a claim and motion to strike portions of Plaintiff's Complaint. (Doc. No. 6 & 7.)
7  Aurora seeks dismissal of all eight causes of action and requests judicial notice of several
8  documents in support of its motion.

9  **DISCUSSION**

10  **I.    12(b)(6) Motion to Dismiss**

11  　　A.    Legal Standard

12  　　　A complaint must contain "a short and plain statement of the claim showing that the
13  pleader is entitled to relief."  Fed. R. Civ. P. 8(a) (2009).  A motion to dismiss pursuant to Rule
14  12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in
15  the complaint.  Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The
16  court must accept all factual allegations pled in the complaint as true, and must construe them and
17  draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty
18  Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a
19  complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state
20  a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
21  (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the
22  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
23  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).
24  　　　However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
25  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of
26  action will not do."  Twombly, 550 U.S. at 555 (citation omitted).  A court need not accept "legal
27  conclusions" as true.  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  In spite of the
28  deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to

1  assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have
2  violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal.,
3  Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

      B.     Request for Judicial Notice

           1.     Legal Standard

6  In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider
7  only allegations contained in the pleadings, exhibits attached to the complaint, and matters
8  properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).
9  Federal Rule of Evidence 201 provides, "[a] judicially noticed fact must be one not subject to
10 reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the
11 trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy
12 cannot reasonably be questioned." Fed. R. Evid. 201 (2009).

           2.     Documents Relating to the Loan Origination

14 On October 29, 2009, Aurora filed a request for judicial notice of the following documents
15 relating to Plaintiff's loan, recorded in the Official Records of the County of San Diego: (1) the
16 Deed of Trust, filed on September 25, 2006; (2) the Notice of Default, filed on March 17, 2009;
17 (4) Notice of Sale, filed on July 13, 2009; and (5) the Trustee's Deed Upon Sale, filed on
18 September 15, 2009. Because these documents are recorded with the County of San Diego, they
19 are public records appropriate for judicial notice. A court may consider matters of public record
20 on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for
21 summary judgment." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986),
22 *abrogated on other grounds by* Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111
23 (1991).

24 The Notice of Assignment, Sale, or Transfer of Servicing sent to Plaintiff on March 27,
25 2008, is also appropriate for judicial notice because Plaintiff relies on this document, or the lack
26 thereof, and does not question its authenticity. "[A] court may consider a writing referenced in a
27 complaint but not explicitly incorporated therein if the complaint relies on the document and its
28 authenticity is unquestioned." Id. (quoting Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.

1998), *superseded by statute on other grounds as stated in* Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006)).

### 3. Documents Relating to Aurora's Corporate Status

Aurora also requests judicial notice of the following documents relating to its status as an operating subsidiary of a federal savings association: (1) the Federal Stock Charter for Lehman Brothers Bank, FSB, filed and executed by the Bank and the Office of Thrift Supervision ("OTS"); (2) the OTS Order Approving Applications to Establish Operating Subsidiaries designating Aurora Loan Services as an operating subsidiary of Lehman Brother Bank, FSB; (3) a website printout from the OTS website identifying Aurora as an operating subsidiary of Lehman Brothers Bank, FSB; and (4) the Secretary's Certificate certifying the name change of Lehman Brothers Bank, FSB to Aurora Bank FSB.

These documents are properly subject to judicial notice under Federal Rule of Evidence 201. Information on government agency websites "ha[s] often been treated as proper subjects for judicial notice." Paralyzed Veterans of Am. v. McPherson, 2008 U.S. Dist. LEXIS 69542, at *17 (N.D. Cal. Sept. 8, 2008) (citations omitted). United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet." (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999))).

However, the Court declines to take judicial notice of a chart reflecting the Fannie Mae Conventional Loan Limits from 1980 to 2009, as this document has no bearing on the Court's findings in this order.

### C. Preemption

Aurora argues that Plaintiff's state law claims attacking the loan origination are preempted by the Home Owners Loan Act ("HOLA") and OTS regulations.[1]

### 1. HOLA Preemption of State Law Causes of Action

---

[1] Plaintiff does not address this argument in its opposition. Rather, Plaintiff argues that TILA does not preempt its state law causes of action, an argument Aurora does not raise.

"The HOLA, a product of the Great Depression of the 1930's, was intended 'to provide emergency relief with respect to home mortgage indebtedness at a time when as many as half of all home loans in the country were in default." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 159 (1982). HOLA provided for the creation of a system of federal savings and loan associations. Id. The OTS is the principal regulator for federal savings associations, with "broad authority to issue regulations." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008); see also 12 U.S.C. § 1464 (2009).[2] Because HOLA created the OTS, the federal savings associations that OTS regulates are subject to HOLA.

Section 560.2(a) of the OTS regulations expressly provides that a federal savings association's lending activities are not to be regulated by state law:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities.

12 C.F.R. § 560.2(a) (2009). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." Silvas, 514 F.3d at 1005 (quoting Bank of Am. v. City & County of S.F., 309 F.3d 551, 558 (9th Cir. 2002). Section 560.2(b) goes on to provide a list of the types of state laws that are preempted, including laws imposing requirements relating to:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or

---

[2] Section 1464 provides, *inter alia*, that the Director of the OTS "is authorized, under such regulations as the Director may prescribe–(1) to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks), and (2) to issue charters therefor."

        applicants;

        (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

Id. § 560.2(b). Section 560.2(c) further provides that other types of state laws are not preempted, "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [the regulation]" - for example, state contract, commercial, real property, and tort law. Id. § 560.2(c). With these two provisions in mind, the OTS has set forth a three-step preemption analysis to determine whether a state law is preempted:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c) [providing that state laws of general applicability only incidentally affecting federal savings associations are not preempted]. For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). Courts should look to the "as-applied" effect of the state law to determine if it a type of law contemplated in the list under Section 560.2(b). Id. at 1006.

### 2. Preemption of Plaintiff's State Law Claims

Aurora has submitted ample evidence that it is a wholly owned operating subsidiary of a federally chartered bank, Aurora Bank, FSB, formally Lehman Brothers Bank.[3] Thus, state law claims against Aurora may be preempted by HOLA and OTS regulations.[4] Aurora argues that Plaintiff's state law causes of action are based on allegations relating to the loan origination or servicing, and are therefore preempted. The Court analyzes Plaintiff's specific claims below.

#### a. Constructive Fraud, Fraud, and Negligent Misrepresentation

---

[3] See *supra* Section B.3. (documents relating to Aurora's corporate status). Plaintiff does not challenge the authenticity of these documents.

[4] The preemptive reach of HOLA and OTS regulations applies to operating subsidiaries. 12 C.F.R. § 559.3(n)(1) ("State law applies to operating subsidiaries only to the extent it applies to [the federal savings association]."); see also WFS Financial, Inc. v. Dean, 79 F. Supp.2d 1024, 1026 (W.D.Wis.1999) ("The operating subsidiary is subject to the same federal regulations as its parent and is treated as a department or division of its parent for regulatory purposes.").

Plaintiff's causes of action for constructive fraud, fraud, and negligent misrepresentation are based on alleged misrepresentations relating to the loan transaction - including the interest rate, amount financed, finance charges, and disclosures - which induced Plaintiff to enter into the loan. As applied, these state law causes of action appear to be based entirely on the "terms of credit," "loan related fees," and "disclosures," falling within the types of preempted laws listed in Section 560.2(b). See 12 C.F.R. § 560.2(b)(4)-(5), (9).

However, when plaintiffs rely on the duty not to misrepresent material facts, which is generally applicable to all businesses, and when application of the law would not regulate lending activity, such claims are not preempted. See Reyes v. Downey Savings & Loan Ass'n, F.A., 541 F. Supp. 2d 1108 (C.D. Cal. 2008) (holding an unfair competition claim based on the bank's alleged misrepresentation that the loan's interest rate would be lower was not preempted where it "would require no affirmative action or type of representation by a lending institution"); Biggins v. Wells Fargo & Co., 2009 WL 2246199, at *15 (N.D. Cal. July 27, 2009) (noting that if the factual basis for an allegation of misrepresentation was that "a Defendant represented to a Plaintiff that the interest rate on a loan would be 5%, when in fact the interest rate was actually 7%," such a claim might not be preempted).

Here, Plaintiff alleges "the loan was not at the rate represented to Plaintiff." (Compl. ¶ 26.) At this stage, the Court must construe the allegations and draw all reasonable inferences from them in favor of the nonmoving party. Therefore, to the extent that the basis for Plaintiff's causes of action for constructive fraud, fraud, and negligent misrepresentation can be construed as Aurora's alleged misrepresentation of the interest rate as lower than it actually was, these claims are not preempted. Construed in this light, these causes of action are based on state laws of general applicability and "only incidentally affect the lending operations of Federal savings associations." See 12 C.F.R. § 560.2(c). To this extent, these causes of action are not completely preempted.

        b.  Predatory Lending

Plaintiff's cause of action for violation of California's predatory lending laws, codified at California Financial Code § 4970 *et seq*, is preempted by HOLA and OTS regulations. "[W]hen plaintiffs rely upon state laws of specific application to savings and loans activity, their claims are

1 preempted." Reyes, 541 F. Supp. 2d at 1113; see also Fidelity, 458 U.S. 141 (holding a federal
2 due-on-sale regulation preempted conflicting state limitations on the due-on-sale practices of
3 federal savings associations). California's predatory lending laws explicitly impose requirements
4 of the type listed in Section 560.2(b), including "loan-related fees"[5] and "terms of credit,"
5 "disclosures," and the "processing, origination, servicing, sale or purchase of, or investment or
6 participation in, mortgages."[6] Therefore, this cause of action is preempted.

          c.     California Business and Professions Code § 17200

Plaintiff's cause of action for unfair competition in violation of California Business and Professions Code § 17200 is based on business practices which directly implicate the types of preempted laws listed in Section 560.2(b). Clearly, to the extent Plaintiff bases the claim on violation of state lending laws[7] and failure to extend loan modification assistance to Plaintiff, the claim is preempted because the claim explicitly affects banking and lending. In addition, to the extent the cause of action is based on violations of TILA, the claim is also preempted. "[A] state's provision of remedies for a violation of federal law amounts to a form of state regulation of the affected area, even if the state does not impose any requirements beyond those provided by the federal law." Silvas v. E*Trade Mortgage Corp., 421 F. Supp. 2d 1315, 1320 (S.D. Cal. 2006) (holding that plaintiff's claim under Section 17200 based on alleged TILA violations was preempted). However, as with Plaintiff's causes of action for constructive fraud, fraud, and negligent misrepresentation, Plaintiff's claim is not completely preempted to the extent it is based on Aurora's alleged misrepresentation of the interest rate as lower than it actually was.

          d.     Breach of Fiduciary Duty

The Court does not resolve the question of whether Plaintiff's cause of action for breach of fiduciary duty is preempted, because it is well established that a financial institution owes no duty

---

[5] "A person who originates a covered loan shall not make a covered loan that finances points and fees in excess of one thousand dollars ($1,000) or 6 percent of the original principal balance, exclusive of points and fees, whichever is greater." Cal. Fin. Code § 4979.6 (2009).

[6] Cal. Fin. Code § 4973.

[7] Plaintiff alleges violations of the lending laws in California Civil Code §§ 1812.30, 2955.5(a) and California Financial Code § 4052.

of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  Nymark v. Heart Fed. Sav. & Loan Assn., 283 Cal. Rptr. 53, 56 (Ct. App. 1991); see also Price v. Wells Fargo Bank, 261 Cal.Rptr. 735, 740 (Ct. App. 1989) (citing Downey v. Humphreys, 227 P.2d 484 (Cal. 1951)) ("'A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.' The same principle should apply with even greater clarity to the relationship between a bank and its loan customers.").  Plaintiff alleges no other basis for a fiduciary duty with respect to Aurora.

### e. Conclusion

Accordingly, the Court finds Plaintiff's state causes of action for predatory lending and breach of fiduciary duties are dismissed with prejudice.  Plaintiff's claims for constructive fraud, fraud, and negligent misrepresentation, and violation of Section 17200 are not completely preempted to the extent they are based on Aurora's alleged misrepresentation of the interest rate.

### D. Violation of TILA

Plaintiff's first cause of action is for rescission and damages for violation of TILA, 15 U.S.C. § 1601, *et seq.*, and TILA's implementing regulation ("Regulation Z"), 12 C.F.R. § 226, which sets out TILA's general disclosure requirements.  Regulation Z requires a creditor to make certain disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17 (2009).  Even assuming Aurora is subject to TILA's requirements,[8] Plaintiff's claims fail for the reasons set forth below.

Plaintiff alleges he is entitled to damages because the loan is "deceptive and/or lacks a meaningful disclosure of credit terms." (Compl. ¶ 29a.)   Plaintiff also alleges Aurora provided false and misleading disclosures and failed to deliver all material disclosures. (Compl. ¶¶ 35, 37.)

---

[8] Civil liability under TILA applies to creditors.  See 15 U.S.C. § 1640(a).  Section 1641 extends liability to the assignee of a creditor "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." Id. § 1641(a).  Section 1641 does not extend liability to a loan servicer as an assignee "unless the servicer is or was the owner of the obligation." Id. § 1641(f).  A servicer is not treated as the "owner of the obligation" on the basis of an assignment "solely for the administrative convenience of the servicer in servicing the obligation." Id. § 1641(f)(2).
Plaintiff argues in his opposition that Aurora was an assignee of the loan, and points to the Trustee's Deed upon Sale naming Aurora as the foreclosing beneficiary. (RJN, Exhibit 5.) Aurora argues that it was only the loan servicer and was assigned a beneficial interest solely for the administrative convenience in servicing the obligation.

Plaintiff's claims for damages are barred by the one-year statute of limitations. Any action for TILA damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As a general rule, in claims under TILA, the statutory period "starts at the consummation of the [loan] transaction." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). Here, because Plaintiff consummated the loan on September 6, 2006 and brought suit on August 18, 2009, almost three years later, Plaintiff's claim for damages is time-barred. Plaintiff alleges no facts to support equitable tolling.

Plaintiff argues in its opposition that the statutory period started when Aurora violated Section 1635(b) of TILA by failing to respond within twenty days to his notice of rescission. The Court agrees that, as to this particular violation, the statutory period may not have run. Plaintiff alleges he rescinded the loan transaction in a letter mailed on July 9, 2009. (Compl. ¶ 30.) However, the letter itself indicates Plaintiff only mailed it to defendants Loan City, World Savings, and Harborside Financial Network. (Compl., Exhibit A.) Plaintiff argues in his opposition that the Complaint served as an additional notice of rescission, which Aurora failed to respond to. This argument also fails. As Aurora points out in its reply, pursuant to Section 1635(f), Plaintiff's right to rescind expired on September 8, 2009 when the Property was sold at the trustee's sale, and Plaintiff does not allege the Complaint was served on Aurora before the foreclosure sale took place. Section 1635(f) provides that the right of rescission expires at the latest, "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). Furthermore, even if the Complaint was served prior to the foreclosure sale, Plaintiff could not plausibly allege Aurora failed to respond to the notice of rescission when the Complaint itself served as the notice.

Accordingly, Plaintiff's claim for damages under TILA is dismissed. In addition, because Plaintiff's right of rescission was extinguished by the foreclosure sale, Plaintiff's claim for rescission is also dismissed. However, the Court grants Plaintiff leave to amend the Complaint with respect to the issue of whether the Complaint was served on Aurora before the foreclosure took place.

//

1  //

2        E.    <u>Constructive Fraud, Fraud, and Negligent Misrepresentation</u>

3        Plaintiff brings causes of action for constructive fraud, [9] fraud,[10] and negligent misrepresentation.[11] Each of these causes of action is based on alleged misrepresentations relating to the loan origination, which induced Plaintiff to enter into the loan. However, Plaintiff fails to allege Aurora played any role in the loan origination. Plaintiff only alleges "Harborside was a licensed real estate loan broker working on behalf of Plaintiff in securing a loan from Loan City" and that Sal Sandjep, a Harborside representative, informed Plaintiff that he could get Plaintiff a loan at a reasonable rate of interest. (Compl. ¶¶ 23-24, 70.)

      The Court cannot assume Plaintiff can prove facts he has not alleged. See <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Accordingly, these three causes of action are dismissed.

      F.    <u>Violation of California Business and Professions Code § 17200</u>

      Plaintiff alleges Aurora violated California's unfair competition statute, which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009). The Court concluded earlier that this cause of action is not preempted to the extent it is based on Aurora's alleged misrepresentation of the interest rate as lower than it actually was. However, as discussed in the previous section, Plaintiff has not alleged Aurora played any role in the loan origination. Accordingly, Plaintiff's claim for violation of Section 17200 is dismissed.

      G.    <u>Declaratory Relief</u>

---

[9] Under California law, "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." Cal. Civ. Code § 1573.

[10] Under California law, there are five elements of common law fraud: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. <u>Gil v. Bank of Am., N.A.</u>, 42 Cal. Rptr. 3d 310, 317 (Ct. App. 2006).

[11] Negligent misrepresentation also consists of five elements: (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." <u>Fox v. Pollack</u>, 226 Cal. Rptr. 532, 537 (Ct. App. 1986).

1    Plaintiff requests a judicial determination of the parties' rights and duties and whether
2 Aurora violated federal and state lending laws. Because the Court's determination of Plaintiff's
3 substantive causes of action resolves these issues, the Court grants the motion to dismiss Plaintiff's
4 cause of action for declaratory relief.

5 **II.    Motion to Strike**

6    Under Rule 12(f), the Court may "strike from a pleading . . . any redundant, immaterial,
7 impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (2009). Here, Aurora moves to strike
8 Plaintiff's requests for punitive damages because Plaintiff has failed to make sufficient factual
9 allegations to support such an award. Because the Court had granted Aurora's motion to dismiss
10 Plaintiff's Complaint in its entirety, the motion to strike is denied as moot.

11                                              **CONCLUSION**

12    The Court HEREBY ORDERS:

13 (1)    Plaintiff's causes of action for predatory lending, breach of fiduciary duties, constructive
14 fraud, fraud, negligent misrepresentation, and violation of Section 17200 are DISMISSED WITH
15 PREJUDICE;

16 (2)    Plaintiff's cause of action for violation of TILA is DISMISSED WITHOUT PREJUDICE;
17 and

18 (3)    The motion to strike is DENIED AS MOOT.

19    The Court grants Plaintiff leave to amend the Complaint with respect to Plaintiff's TILA
20 cause of action to the extent it is based on Aurora's alleged failure to respond to Plaintiff's notice
21 of rescission. Plaintiff shall file the amended complaint **no later than 20 days** from the filing date
22 of this order.

23

24    **IT IS SO ORDERED.**

25

26 DATED: January 27, 2010

27                                                    _____
                                                      IRMA E. GONZALEZ, Chief Judge
28                                                    United States District Court